E-filing

1  Steven P. Small (SBN 39869)
2  2509 Santa Clara Avenue
    Alameda, California 94501
3  Telephone:  (510) 865–2038
    Facsimile:  (510) 523–7877
4  E-mail:  stevensmall@mac.com

5  Attorney for Plaintiff
    MARK SHEREDY

**FILED**

OCT - 1 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF COURT
OAKLAND CALIFORNIA

6

7              **UNITED STATES DISTRICT COURT**

8        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9  MARK SHEREDY,          No. **C08-04570 CW**

                Plaintiff.

10                     **COMPLAINT FOR SECURITIES FRAUD UNDER RULE 10-b5 AND STATE AND COMMON LAW CLAIMS**

11      v.

12  TERRY L. RITTER and MARC VOGEL,    **DEMAND FOR JURY TRIAL**

13             Defendants.

14

15

16        Plaintiff Mark Sheredy claims for relief as against Terry L. Ritter and Marc Vogel, and

17  alleges:

18                     PARTIES

19      1.    Plaintiff Mark Sheredy is an individual now residing in Santa Clara County, California.

20      2.    Defendant Terry L. Ritter ("RITTER") is an individual now residing in Alameda

21  County, California.

22      3.    Defendant Marc Vogel ("VOGEL") is an individual now residing in San Francisco

23  County, California.

24      4.    a)    Plaintiff is informed and believes and thereon alleges that each of the

25  defendants herein, and at all times relevant to this action, was the agent, the employee, the

26  representing partner, or the joint venturer of the remaining defendants and was acting within the

27  course and scope of that relationship. Plaintiff is further informed and believes and thereon alleges

28  that each of the defendants herein gave consent to, ratified, and authorized the acts alleged herein to

each of the remaining defendants. b) Plaintiff further alleges that in doing the acts alleged herein that RITTER and VOGEL created and operated a conspiracy between them to cause Plaintiff the injuries and losses described below.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction over this action as  to the first and second claims for relief by virtue of Title 15, United States Code Section 77v(a) [Section 22(a) of the Securities Act], on account of the federal securities claim, and by virtue of Title 15, United States Code Sections 78u(d)(3)(A), 78u(e), and 78aa; and Title 28, United States Code Section 1331, and under federal question jurisdiction Title 28, United States Code Section 1367(a).  This Court has supplemental jurisdiction over all other claims for relief set forth herein under Title 28, United States Code Section 1367(a). In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including the mails, airline travel across state lines and across the borders of these United States into foreign lands, the mails, and the wires (including e-mails and the wiring of funds in the banking system, and telephone communications).

6.     Venue is proper in the Northern District of California pursuant to Section 22 of the Securities Act, Title 15, United States Code Section 77v; and Section 27 of the Exchange Act, Title 15, United States Code Section 77aa, because San Francisco County, Alameda County and Santa Clara Counties are in the Northern District of California and are the counties in which the principal events constituting violations of the laws alleged herein took place, and because Alameda County is the residence of RITTER, Santa Clara County is the residence of SHEREDY, and because San Francisco County is the location of VOGEL.

## INTRADISTRICT ASSIGNMENT

7.     Pursuant to Local Rule 3-2(d), this matter is properly assigned to either the San Francisco Division or the Oakland Division, as the events principally occurred in Alameda County.

## BRIEF STATEMENT OF CLAIMS

8.     During the period May 15th to May 30th of 2008, Defendants represented to Plaintiff that they were authorized to sell shares of stock of ECO-FIBER SOLUTIONS, INC., a California

COMPLAINT FOR SECURITIES FRAUD AND STATE AND COMMON LAW CLAIMS — CV _____

corporation (hereafter "EFS").  In reliance upon Defendants' representations, Plaintiff delivered $120,000 to VOGEL to purchase one share of EFS stock.  Instead of delivering the $120,000 to EFS as promised, VOGEL instead delivered the $120,000 to RITTER, who then converted the funds to finance litigation against EFS to perfect Defendants' rights against EFS.  Defendants own no stock in EFS.  Plaintiff's $120,000 has not been returned to him; nor does Plaintiff own the EFS stock he believed he was purchasing.

CLAIMS

9.     Plaintiff is informed, and on the basis of such information and belief, states that on February 21, 2008 RITTER entered into an agreement to invest five million dollars into EFS in exchange for 45% ownership of EFS pursuant to a "Memorandum of Understanding" (hereafter "MOU") attached hereto as Exhibit "1", and incorporated herein by this reference.  The information relied upon by Plaintiff to form this belief is a copy of the MOU attached to a pleading filed by RITTER in pending litigation entitled RITTER vs SMALL, U.S. District Court, Northern District of California, No. 3-08-cv-03074.

10.     Plaintiff is informed, and on the basis of such information and belief, states that pursuant to the above MOU, RITTER invested $400,000 in EFS between February 21, 2008 and May 4, 2008, but no stock was ever issued to RITTER. Further, that EFS paid VOGEL, at the insistence of RITTER, $15,000 in consultation fees, but that no services were ever rendered to EFS by VOGEL. The information relied upon by Plaintiff to form this belief are allegations made by RITTER at paragraph 18 and at page 6, line 16 in the complaint filed by RITTER in pending litigation entitled RITTER vs SMALL, U.S. District Court, Northern District of California, No. No. 3-08-cv-03074.

11.     Plaintiff is informed, and on the basis of such information and belief, states that a payment of $50,000 from RITTER to EFS, received on May 4, 2008, was the last funds paid to EFS by RITTER. Further, RITTER retained an attorney to deal with EFS on or about June 3, 2008.  The information relied upon by Plaintiff to form this belief were allegations made by RITTER at paragraph 21 in the complaint filed by RITTER in pending litigation entitled RITTER vs SMALL, et. al., U.S. District Court, Northern District of California, No. 3-08-cv-03074.

12.     Plaintiff's business from time to time acquires retired food preparation machinery. Prior to May 15, 2008, Plaintiff and VOGEL had engaged in several business transactions where, from time to time, Plaintiff would sell food machinery to VOGEL.

13.     On or about May 15, 2008, VOGEL approached Plaintiff, first by phone, and then in person, to get Plaintiff to invest in EFS.

a)      At this meeting, VOGEL made the following oral representations:

1)      EFS was soon to become a very successful, very profitable company based on their technology to replace wax boxes;

2)      EFS was in great and urgent need for investment funds; they were soon to meet with PCA, a potential buyer, and there was no time to lose before the door to invest in EFS closed;

3)      RITTER owned 45% of the stock of EFS and VOGEL owned 15% (or one third of Ritter's share) of the stock of the company and would sell 7.5% of his holdings, or one share of EFS stock, for $120,000.00;

4)      VOGEL would deliver Plaintiff's investment directly to EFS;

b)      Based on his prior dealings with VOGEL, Plaintiff reasonably relied on VOGEL's statements and representations.

c)      VOGEL's representation that he and Ritter owned stock in EFS was false because stock was never issued to them by EFS.

d)      VOGEL's representation that EFS was to receive the $120,000 was false because VOGEL instead delivered the funds to RITTER, not EFS.

e)      Defendants' misrepresentations (that they owned stock in EFS and that EFS would receive Plaintiff's investment) were material in that Plaintiff would never had made his $120,000 investment if he had known Defendants owned no stock and his funds were to be used to sue EFS instead of investing in EFS.

f)      Defendants' misrepresentations (that they owned stock in EFS and that EFS would receive the investment) directly caused economic loss to Plaintiff because Defendants could not transfer stock they did not own; and the funds taken from Plaintiff were not given to EFS, but

4

converted by Defendants' conspiracy to fund their litigation against EFS, which plaintiff knew nothing about and which plaintiff would never have approved.

g)      Defendants' misrepresentations (that they owned stock in EFS and that EFS would receive the investment) were connected to a sale of a security, namely the payment of $120,000 for one share of EFS stock from Defendants to Plaintiff.

h)      Defendants' misrepresentations (that they owned stock in EFS and that EFS would receive the investment) demonstrate a wrongful state of mind because neither defendant had reason to believe he owned EFS stock and the timing of their actions (transfer of funds on 30 May 2008 and then an attorney's first letter on June 3, 2008) indicates each knowingly lied to Plaintiff regarding what was going to done with Plaintiff's funds.

14.     On or about May 17, 2008, Plaintiff gave VOGEL a check in the amount of $60,000.

a)      At this meeting, VOGEL made the following oral representation: VOGEL would deliver Plaintiff's investment directly to EFS;

b)      Based on his prior dealings with VOGEL, Plaintiff reasonably relied on VOGEL's statements and representations.

c)      VOGEL's representation that EFS was to receive the $120,000 was false because VOGEL instead delivered the funds to RITTER, not EFS.

d)      Defendants' misrepresentation that EFS would receive Plaintiff's investment was material in that Plaintiff would never have made his $120,000 investment if he had known his funds were to be used to sue EFS instead of investing in EFS.

e)      Defendants' misrepresentation that EFS would receive the investment directly caused economic loss to Plaintiff because the funds taken from Plaintiff were not given to EFS, but instead converted by Defendants' conspiracy to fund their litigation against EFS, which plaintiff knew nothing about and which plaintiff would never have approved.

f)      Defendants' misrepresentation that EFS would receive the investment was connected to a sale of a security, namely the payment of $120,000 for one share of EFS stock from Defendants to Plaintiff.

COMPLAINT FOR SECURITIES FRAUD AND STATE AND COMMON LAW CLAIMS – CV _____

g)    Defendants' misrepresentation that EFS would receive the investment demonstrated a wrongful state of mind because the timing of their actions (transfer of funds on 30 May 2008 and attorney's first letter on June 3, 2008) indicates each knowingly lied to Plaintiff regarding what was going to be done with Plaintiff's funds.

15.    On or about May 28, 2008, VOGEL contacted Plaintiff by phone to obtain $60,000 as Plaintiff's second installment to his investment in EFS.

a)    At said time, , VOGEL repeated the following oral representations:

1)    EFS was soon to become a very successful, very profitable company based on their technology to replace wax boxes;

2)    EFS was in great and urgent need for investment funds; they were soon to meet with PCA, a potential buyer, and there was no time to lose before the door to invest in EFS closed;

3)    RITTER owned 45% of the stock of EFS and VOGEL owned 15% (or one third of Ritter's share) of the stock of the company and would sell 7.5% of his holdings, or one share of EFS stock, for $120,000.00;

4)    VOGEL would deliver Plaintiff's investment directly to EFS;

b)    Based on his prior dealings with VOGEL, Plaintiff reasonably relied on VOGEL's statements and representations.

c)    VOGEL's representation that he and Ritter owned stock in EFS was false because stock was never issued to them by EFS.

d)    VOGEL's representation that EFS was to receive the $120,000 was false because VOGEL instead delivered the funds to RITTER, not EFS.

e)    Defendants' misrepresentations (that they owned stock in EFS and that EFS would receive Plaintiff's investment) were material in that Plaintiff would never had made his $120,000 investment if he had known that Defendants owned no stock and his funds were to be used to sue EFS instead of investing in EFS.

f)    Defendants' misrepresentations (that they owned stock in EFS and that EFS would receive the investment) directly caused economic loss to Plaintiff because Defendants could not

6

transfer stock they did not own; and the funds taken from Plaintiff were not given to EFS, but instead converted by Defendants' conspiracy to fund their litigation against EFS, which plaintiff knew nothing about and which plaintiff would never have approved.

g) Defendants' misrepresentations (that they owned stock in EFS and that EFS would receive the investment) were connected to a sale of a security, namely the payment of $120,000 for one share of EFS stock from Defendants to Plaintiff.

h) Defendants' misrepresentations (that they owned stock in EFS and that EFS would receive the investment) demonstrate a wrongful state of mind because neither defendant had reason to believe he owned EFS stock and the timing of their actions (transfer of funds on 30 May 2008 and an attorney's first letter on June 3, 2008) indicates each knowingly lied to Plaintiff regarding what was going to be done with Plaintiff's funds.

16. On or about May 30, 2008, Plaintiff gave VOGEL a check in the amount of $60,000 and the parties signed an agreement regarding the sale, (hereafter "30 May Agreement") attached hereto as Exhibit "2", and incorporated herein by this reference.

a) At this meeting, VOGEL repeated the following oral representation: VOGEL would deliver Plaintiff's investment directly to EFS;

b) Based on his prior dealings with VOGEL, Plaintiff reasonably relied on VOGEL's statements and representations.

c) VOGEL's representation that EFS was to receive the $120,000 was false because VOGEL instead delivered the funds to RITTER, not EFS.

d) Defendants' misrepresentation that EFS would receive Plaintiff's investment was material in that Plaintiff would never have made his $120,000 investment if he had known his funds were to be used to sue EFS instead of investing in EFS.

e) Defendants' misrepresentation that EFS would receive the investment has directly caused economic loss to Plaintiff because the funds taken from Plaintiff were not given to EFS, but instead converted by Defendants' conspiracy to fund their litigation against EFS, which plaintiff knew nothing about and which plaintiff would never have approved.

7

f) Defendants' misrepresentation that EFS would receive the investment was connected to a sale of a security, namely the payment of $120,000 for one share of EFS stock from Defendants to Plaintiff.

g) Defendants' misrepresentation that EFS would receive the investment demonstrates a wrongful state of mind because the timing of their actions (transfer of funds on 30 May 2008 and an attorney's first letter on June 3, 2008) indicates each knowingly lied to Plaintiff regarding what was going to done with Plaintiff's funds.

17. On or about July 23, 2008 Plaintiff learned for the first time that neither VOGEL nor RITTER owned stock in EFS; that his $120,000 investment had not reached EFS; and, that on June 25, 2008 RITTER had filed litigation against EFS and its principal officers.

18. That on or about August 6, 2008 VOGEL called Plaintiff and reported that everything at EFS was going well.

19. On or about August 15, 2008 Plaintiff called VOGEL, who informed Plaintiff that his funds had been given to RITTER and assured Plaintiff that Plaintiff's investment was safe.

20. On or about September 17, 2008, Plaintiff called VOGEL and requested that Plaintiff's money be returned. VOGEL stated that he had sold shares similar to Plaintiff's to: 1) an unidentified person residing in San Francisco, California; 2) an unidentified person residing in London, England; and 3) an unidentified person residing in Belgium.

21. Shortly after the call in paragraph 20 above, and on the same date, Plaintiff received a conference call from VOGEL and RITTER, during which RITTER acknowledged to Plaintiff:

a) that RITTER had received Plaintiff's $120,000;

b) that RITTER was using the funds for his "legal defense fund" to protect his financial interests in EFS;

c) that Defendants should have informed Plaintiff regarding this change, but did not; and

d) that Defendants were confident they would prevail in their litigation against EFS.

LOSS

22.     Despite making demand to defendants, Plaintiff has not received back the $120,000 he believed he was investing in EFS;

23.     Despite making demand to defendants, Plaintiff has not received the one share of common stock in EFS he believed he was purchasing;

24.     Instead of Plaintiff receiving a share in a corporation, without his knowledge or consent, Defendants converted his funds into a war chest to further their interests by funding litigation against the corporation in which Plaintiff believed he was investing.

SCIENTER

25.     RITTER and VOGEL acted intentionally and/or with reckless disregard for whether their statements were true or false in the misrepresentations alleged above and in their failure to disclose material facts for which they were under a duty to disclose. and/or that were necessary to make the other statements they had made, in light of the circumstances in which they were made, not misleading.  Further, defendants' conduct constituted such extreme departure from standards of ordinary care, and was so obvious, that each must have been aware that he was intentionally misleading Plaintiff.

VIOLATIONS ALLEGED

26. Violations alleged:  By engaging in the above conduct, defendants, and each of them, violated the registration provisions of Section 12(a)(1) of the Securities Act of 1933 ("Securities Act"), Title 15, United States Code Sections 77a, et seq.  RITTER and VOGEL, by engaging in the conduct alleged above, have violated the antifraud provisions of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Title 15, United States Code Section 78j(b), and Rule 10b-5 there under, 17 Code of Federal Regulations Section 240.10b-5.

## FIRST CLAIM FOR RELIEF

## SECURITIES FRAUD UNDER SECTION 10(b), 1934 ACT

27.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

28.     Defendants, directly or indirectly, in the course of attempting to sell EFS stock to Plaintiff, used the mails (paper as well as electronic) and telephone and/or the means and instrumentalities of interstate commerce, including Internet mail receipt and transmission, and including the federal banking system.

29.     In such sales, defendants, directly or indirectly, with scienter:

a.     employed devices, schemes, and artifices to defraud;

b.     made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and,

c.     engaged in acts and practices which operated or would operate as a fraud or deceit upon other persons.

30.     Plaintiff relied on and was induced by defendants' conduct to give them $120,000 to purchase a share EFS stock. The untrue statements and artifices damaged Plaintiff in the total amount of the investment, $120,000, as the investment was converted by Defendants to their own use.

31.     On account of such acts, defendants directly or indirectly violated 15 United States Code Section 78j(b) [Section 10(b) of the Securities Exchange Act of 1934] and Rule 10b-5 promulgated thereunder (17 Code of Federal Regulations Section 240.10b-5).

32.     On account of such defendants' acts, such defendants are liable to Plaintiff. Wherefore, plaintiff requests relief as set forth in the prayer below.

SECOND CLAIM FOR RELIEF

OFFER AND SALE OF UNREGISTERED SECURITIES

VIOLATIONS OF SECTION 12(a)(1) OF THE SECURITIES ACT

33.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

34.     RITTER and VOGEL, by engaging in the conduct described above, directly or indirectly:

a.     Made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities through the use of internet communications and the national banking system or otherwise;

b.     Carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities for the purpose of sale or for delivery after sale; or

c.     Made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell securities through the use of telephone and internet communications or otherwise.

35.     No registration statement has been filed for any of the securities offered and sold or caused to be sold by defendants to plaintiff, nor were those offerings exempt from registration.

36.     Defendants have violated Section 12(a)(1) of the Securities Act by the offer and sale of unregistered securities to plaintiff.

37.     Plaintiff has been damaged in the amount of $120,000.00 and at a minimum is entitled pursuant to Title 15, United States Code Section 77l(a)(1) to receive the full value of the consideration he has paid, plus interest, from defendants.

38.     By reason of the foregoing, Defendants RITTER and VOGEL violated Section 12(a)(1) of the Securities Act, Title 15, United States Code Sections 77a, *et seq.*

39.     On account of such defendants' acts, such defendants are liable to plaintiff. Wherefore, plaintiff requests relief as set forth in the prayer below.

### THIRD CLAIM FOR RELIEF

### FOR SALE OF SECURITIES IN VIOLATION OF

### CALIFORNIA QUALIFICATION REQUIREMENT

40.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

41.     On or about each of the alleged dates in 2008 in Alameda, California, defendants offered and sold to plaintiff ownership interests in EFS for the total price alleged hereinabove.

42.     Each of these sales of interests in EFS was an issuer transaction in that defendants purveyed interests in EFS, that they did not own, to plaintiff and other unsuspecting members of the public. Defendants' intent and motive was to obtain plaintiff's funds and convert said funds for their own uses through the unlawful sales of unqualified, nonexempt securities.  None of the defendants were licensed securities brokers or salesmen.

43.     Each of these sales constituted an issuer transaction in that it was part of an offering of unqualified, nonexempt securities of EFS for the capitalization of EFS.

44.     Each of these transactions was subject to qualification, was not exempt from qualification, and was not and to this date of this Complaint, has not been qualified as any permitted securities transaction with the California Commissioner of Corporations or with the Securities and Exchange Commission.  Each of these transactions was unlawful under California Corporations Code Sections 25110 and 25130.

45.     As a result of the above-described acts, under California Corporate Securities Law, defendants are liable to plaintiff who is entitled to, and hereby does, rescind the above-described purchases.  Plaintiff, before entry of judgment, will tender to defendants all interests in EFS sold to plaintiff as purchased from defendants, and any income received thereon.

46.     On account of such defendants' acts, such defendants are liable to plaintiff.  Wherefore, plaintiff requests relief as set forth in the prayer below.

COMPLAINT FOR SECURITIES FRAUD AND STATE AND COMMON LAW CLAIMS – CV _____

### FOURTH CLAIM FOR RELIEF

### MATERIAL MISREPRESENTATION IN SECURITIES TRANSACTION

### UNDER CALIFORNIA CORPORATE SECURITIES LAW

47.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

48.     Defendants' sales of interests in EFS as alleged above were made by means of oral and written communications from the defendants, which omitted to state material facts necessary in order to make the statements made in those communications, in light of the circumstances under which they were made, not misleading, and which contained untrue statements of material fact.    The communications from defendants were misleading and untrue as alleged hereinabove.    Defendants RITTER and VOGEL were sellers in the transactions.    Defendants RITTER and VOGEL with intent to induce plaintiff's reliance, materially misrepresented to Plaintiff that they owned EFS stock.

49.     As a result of the material misrepresentation, plaintiff is entitled to rescind the above-described purchases and to damages under California Corporations Code Sections 25504 and 25504.1.

50.     As a result of the above-described acts, under California Corporate Securities Law, defendants are liable to plaintiff, who is entitled to, and hereby does, rescind the above-described purchases.    Plaintiff, before entry of judgment, will tender to defendants all interests in EFS sold to plaintiff, and any income received thereon.

51.     On account of such defendants' acts, such defendants are liable to plaintiff.    Wherefore, plaintiff requests relief as set forth in the prayer below.

### FIFTH CLAIM FOR RELIEF

### COMMON LAW FRAUD

52.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

53.     In the course of the representations, statements, half-truths, partial disclosures, and omissions alleged hereinabove, defendants directly or indirectly made material representations to plaintiff which were false, and defendants directly or indirectly made material omissions to plaintiff which failed to provide material information to plaintiff.

54.     Defendants knew that their material representations were false, and defendants knew that their material omissions would mislead plaintiff into thinking material matters were true when in fact such matters were false.

55.     In making the material misrepresentations and material omissions alleged herein, defendants intended to deceive plaintiff and to induce plaintiff to invest in EFS and to induce plaintiff to continue investing in EFS.

56.     Plaintiff was in fact deceived by the defendants' material misrepresentations and material omissions.  Had plaintiff known the truth, plaintiff would not have invested in EFS.

57.     Plaintiff has been damaged in the amounts of his purchase of the EFS stock.

58.     In the commission of the acts herein, defendants intended to cause injury to plaintiff, knew that the conduct described herein would cause injury to plaintiff, and acted out of malice, fraud, and oppression as defined in Civil Code Section 3294.  Such conduct was calculated to injure plaintiff, and plaintiff should recover, in addition to actual damages, exemplary damages to make an example of and to punish defendants.

59.     On account of such defendants' acts, said defendants are liable to plaintiff.  Wherefore, plaintiff requests relief as set forth in the prayer below.

SIXTH CLAIM FOR RELIEF

NEGLIGENT MISREPRESENTATION

60.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

61.     In the course of the representations, statements, half-truths, and partial disclosures alleged hereinabove, defendants directly or indirectly made positive material representations to plaintiff that were false.

62.     Defendants had no reasonable grounds for believing their statements to plaintiff were true.

63.     Plaintiff has been damaged in the amount of $120,000.

64.     In the commission of the acts herein, defendants intended to cause injury to plaintiff, knew that the conduct described herein would cause injury to plaintiff, and acted out of malice, fraud,

14

and oppression as defined in Civil Code Section 3294. Such conduct was calculated to injure plaintiff, and plaintiff should recover, in addition to actual damages, exemplary damages to make an example of and to punish defendants.

65. On account of such defendants' acts, such defendants are liable to plaintiff. Wherefore, plaintiff requests relief as set forth in the prayer below.

SEVENTH CLAIM FOR RELIEF

CONVERSION OF PLAINTIFF'S MONEY

66. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

67. By engaging in the conduct alleged, defendants converted plaintiff's assets for their own use and benefit by using Plaintiff's funds to pay for Defendant's legal fees.

68. In the commission of the acts herein, defendants intended to cause injury to plaintiff, knew that the conduct described herein would cause injury to plaintiff, and acted out of malice, fraud, and oppression as defined in Civil Code Section 3294. Such conduct was calculated to injure plaintiff, and plaintiff should recover, in addition to actual damages, exemplary damages to make an example of and to punish defendants.

69. As a result of defendants' acts, plaintiff was damaged in the amount of $120,000.

70. On account of such defendants' acts, such defendants are liable to plaintiff. Wherefore, plaintiff requests relief as set forth in the prayer below.

EIGHTH CLAIM FOR RELIEF

INJUNCTIVE RELIEF

71. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 26 of this Complaint.

72. Plaintiff is entitled to extraordinary and equitable relief to prevent defendants from selling more illegal securities to investors which sales will irreparably harm plaintiff in three distinct ways: (a) by dilution of plaintiff's potential investment in EFS; (b) by creating corporate liability to investors for omissions, concealments, and nondisclosures; and (c) by conducting unlawful resales of shares of stock.

15

73.   Defendants have already conducted at least four such "sales" and plaintiff is in imminent danger that defendants will continue to unlawfully sell EFS "shares" to the unsuspecting public.

74.   Plaintiff's remedy at law is inadequate in that money damages cannot compensate plaintiff for the losses he will sustain, which will be great and irreparable, if defendants are not restrained and enjoined.

75.   On account of said defendants' acts, said defendants are liable to plaintiff.

Wherefore, plaintiff requests relief as set forth in the prayer below.

## PRAYER

Wherefore, plaintiff prays for judgment against defendants and each of them as follows:

(1)   For Damages;

(2)   For such further and other relief as is just;

(3)   For exemplary damages;

(4)   For interest on all sums;

(5)   For equitable, extraordinary, and injunctive relief, including a temporary restraining order, preliminary injunction, and a permanent injunction preventing defendants from further unlawful sales of EFS shares;

(6)   For costs of suit.

**DATED:** September 29, 2008

By: _____

Steven P. Small

Attorney for Plaintiff MARK SHEREDY

COMPLAINT FOR SECURITIES FRAUD AND STATE AND COMMON LAW CLAIMS — CV _____

DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all claims for which trial by jury is possible.

**DATED:** September 29, 2008

By: _____

Steven P. Small

Attorney for Plaintiff MARK SHEREDY

COMPLAINT FOR SECURITIES FRAUD AND STATE AND COMMON LAW CLAIMS – CV _____



## Memorandum of Understanding

This **Memorandum Of Understanding** (this "MOU") is entered into as of February 21, 2008 between Eco-Fiber Solutions, a California corporation, (hereinafter, "Company"), and Terry L. Ritter (hereinafter, "Investor") with reference to the following:

Board Member Seats:        2 Seats - Permanent  *out of five. RITTER*

Business Consultant:        Mr. Marc Vogel
                           Monthly salary to be mutually acceptable

Employment Agreements:     Company to prepare mutually acceptable employment contracts for all Company employees, including, but not limited to: salary, benefits, and Company stock options.

Worldwide Operations:      Investor to establish: Eco-Fiber Solutions, International (EFSI) EFSI shall be authorized to distribute Company products outside of North America and to certain industries worldwide. Company shall receive 25% of net product sales.

Equity Ownership:          45% of Company stock

Total Investment:          $5,000,000 USD

Investment Terms:          $100,000 upon MOU execution

                           Balance to be paid to Company within next 12 months on a mutually acceptable "use of funds" basis.

Stock Registration:        Investor's stock shall be registered at Company's expense concurrently with first registration rights of any other Company stock or prior to Company's initial public offering.

This MOU is understood, accepted, and binding upon all parties.

By:     Eco-Fiber Solutions

Mr. Robert Von Felden, President

By:     Investor

Mr. Terry L. Ritter, individual

*Ex 1*
*SHEEDY v RITTER*

Loan/Investment Agreement between Mark Sheredy and Marc Vogel

May 30, 2008

Loan/Investment Amount:  $120,000 USD

Whereas Marc Vogel has 15%  ownership in a company called Eco-Fiber, a new company. Verified by the Sign documents from himself, Terry Ritter and Shamim Ritter.

Whereas Eco-Fiber needs seed investment of $120,000 USD.  The funds will be used for the usual start-up costs associated to the business.

Whereas Mark Sheredy will invest the $120,000 under the following auspices:

Whereas Marc Vogel will repay the $120,000 with 12% interest after the first year to Mark Sheredy or at Mark Sheredy's option:

Mark Sheredy can exercise his option on 7.5% of Marc Vogel's 15% ownership in the company which

equals  one percent (1%) share in the US domestic  company (Eco-Fiber usa)  and or  one percent (1%) of Eco-Fiber International,  if the International Company is established as the holding company.


by _____                              by _____

Marc Vogel                                                                    Mark Sheredy



Marc Vogel

475 Chestnut St. #6

San Francisco, Ca. 94133

Tel: 415-576-9007

Ex 2
SHEREDY v RITTER.